IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STEEL WORKERS
LOCAL UNION NO. 348,

      Plaintiff,

v.                                                  Case No. 14-2428-JTM

MAGELLAN MIDSTREAM HOLDINGS
GP, LLC,

      Defendant.

## MEMORANDUM AND ORDER

This case arises out of a labor dispute between plaintiff United Steelworkers Local Union No. 348 ("Local 348") and defendant Magellan Midstream Holdings GP, LLC ("Magellan"). Local 348 brought this action to compel arbitration of an underlying grievance pursuant to a collective-bargaining agreement between the parties. Before the court are the parties' competing motions for summary judgment (Dkts. 26, 28). As discussed below, Local 348's motion is granted and Magellan's motion is denied.

### I. Uncontroverted Facts

Magellan is a Delaware limited liability company in the business of transporting, storing, and distributing a variety of energy products. It is headquartered in Tulsa, Oklahoma, and has a number of stations and terminals in several states that support and service its interstate pipeline system.

Local 348 is a labor organization in an industry affecting commerce within the meaning of § 501 of the Labor Management Relations Act, as amended, 29 U.S.C. § 142, and § 2(5) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(5). Local 348's primary place of business is in Kansas City, Kansas.

Some of Magellan's employees are represented by Local 348; the entities are party to a collective-bargaining agreement ("CBA") concerning those represented employees. Article I of the CBA defines covered employees, Article IX provides a dispute resolution procedure, and Article X provides for arbitration if the parties fail to resolve a dispute under Article IX.

Magellan employs "controllers," also known as "console operators," who are responsible for moving petroleum, crude oil, ammonia, and other natural gas liquids. The controllers operate from ten consoles of computer terminals at a secured location within Magellan's Tulsa headquarters. Each console operates a designated area of the Magellan pipeline system. Controllers represented by Local 348 staff consoles 1-4 and 7. Non-represented controllers staff consoles 5, 6, and 8-10.

In early 2013, Magellan acquired a pipeline system and created Console 9 to operate the associated assets. Magellan staffed Console 9 with non-represented controllers.

On February 18, 2014, Local 348 filed a grievance ("the Console 9 Grievance") under the CBA alleging that Console 9 should be staffed by represented workers because the work performed at that console is covered by Article I of the CBA. The

parties failed to resolve the grievance. Local 348 sought arbitration to resolve the matter, pursuant to Article X of the CBA. Magellan refused arbitration, alleging that the Console 9 Grievance is not arbitrable.

Local 348 filed this action to compel arbitration of the Console 9 Grievance.

## II. Summary Judgment Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is material if it "might affect the outcome of the suit . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party carries its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show "that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

The non-moving party may not rely upon mere allegations or denials in its pleadings or briefs, but must present specific facts showing the presence of a genuine issue of material fact for trial. *Liberty Lobby*, 477 U.S. at 256. Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 249–50. The non-moving party must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. "In making such a determination, the court should not weigh the evidence or credibility of witnesses." *Wells v. Wal-Mart Stores, Inc.*, 219 F. Supp. 2d 1197, 1200 (D. Kan. 2002). The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

The sole issue in this action is whether the Console 9 Grievance is arbitrable. Upon review of the record, the court finds no genuine dispute of material fact and is prepared to rule in summary judgment.

Local 348 seeks to compel arbitration of the Console 9 Grievance by enforcing the CBA's arbitration provision, Article X, under 29 U.S.C. § 185(a). *See AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 646 (1986). As a

general rule, courts should decide the issue of arbitrability, but also "should avoid becoming entangled in the merits of a labor dispute under the guise of deciding arbitrability." *Id.* at 647. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960).

### A. The parties agreed to submit all unresolved questions of contract interpretation to an arbitrator.

"[W]hen the parties have agreed to submit all questions of contract interpretation to the arbitrator," the function of the court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Warrior & Gulf*, 363 U.S. at 567-68.[1]

Article IX(1) of the CBA specifies that "[a]ll complaints and disputes arising out of the interpretation or performance of this Agreement shall be governed in the manner of the settlement by the terms of this Agreement according to the following procedure." (Dkt. 27-2, at 11). The remaining paragraphs of Article IX enumerate the grievance procedure under the CBA. Article X states that a grievance that is not satisfactorily settled under the Article IX procedure "shall, upon written request of the party desiring arbitration, be submitted to arbitration by an impartial arbitrator . . . ." (Dkt. 27-2, at 12). "The Arbitrator is restricted to interpreting,

---

[1] In a dispute over whether CBA coverage should be arbitrated, the issue before the court is "confined to whether the parties agreed to arbitrate this type of dispute." *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. Local 1369 v. Telex Computer Prods., Inc.*, 816 F.2d 519, 525 (10th Cir. 1987). "Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).

5

applying, and determining a violation of the performance and/or provisions of this Agreement . . . ." *Id.*

The parties thus agreed to submit any question of CBA interpretation not satisfactorily resolved under Article IX to an arbitrator pursuant to Article X. The court must therefore compel arbitration if the Console 9 Grievance is, on its face, governed by the CBA.

### B. The Console 9 Grievance is governed by the CBA.

Article I of the CBA defines which employees are covered thereunder and states in relevant part:

> This Agreement shall include all operating and maintenance employees of the Company on the system of the Company, including all pipelines, stations, and terminals and including all Mainline Controllers at the Company's general office, but excluding all other employees at the Company's general office and Region offices and all other supervisory employees. It is expressly understood in connection with this stated coverage that should any difference of opinion or dispute develop with reference thereto, the difference of opinion or dispute shall be determined solely from the language of the National Labor Relations Board orders in the following numbered cases: 17-R-1211, 17-R-850, 17-R-1161, 17-RC-226, 18-R-1713, 18-RC-78, 17-RC-216, 17-RC-227, 17-RC-397, 17-RC-542, 17-RC-590, 17-RC-591, 17-RC-795, 17-RC-1422, 17-RC-1910, 17-RC-3330, 17-RC-8154, 18-RC-14006, 18-RC-14957, 17-RC-12163, 17-RC-12184, and 17-RC-069559, and shall not be determined in any manner by reference to the coverage stated above.

(Dkt. 27-2, at 3). Sentence one of Article I thus expressly defines specific types of employees covered by the CBA. Sentence two clarifies that that, should any dispute arise about whether an individual qualifies under the terms of the first sentence, any such dispute must be resolved according to the language of the referenced NLRB orders.

6

The Console 9 Grievance alleges that the operators of Console 9 are covered by the CBA, which is plainly governed by Article I of the CBA.

### C. The Console 9 Grievance will be arbitrated.

The "court should send the dispute to arbitration unless it can say with positive assurance that the arbitration provision is not susceptible to an interpretation that covers the dispute." *Int'l Bhd. of Elec. Workers Local No. 111 v. Pub. Servs. Co. of Colo.*, 773 F.3d 1100, 1107 (10th Cir. 2014) (citing *AT&T*, 475 U.S. at 650). Magellan argues that the arbitration provision is not subject to an interpretation that covers the dispute because the language of Articles I and X divest an arbitrator of jurisdiction over the grievance. Specifically, Magellan argues that (1) Article I references NLRB orders, which would require an arbitrator to look outside of the agreement in violation of Article X; and (2) the grievance must be settled by the NLRB. The court disagrees.

<u>1. An arbitrator can resolve the grievance without violating Article X(2).</u>

Article X specifies that "[t]he Arbitrator is restricted to interpreting, applying and determining any violation of the performance and/or provisions of this Agreement and cannot add to, modify, delete, or otherwise change any provision of this Agreement." (Dkt. 27-2, at 12). The Console 9 Grievance seeks to determine whether the operators are covered under Article I, which can be determined by an arbitrator interpreting and applying the language of Article I and of the NLRB orders incorporated therein by reference. An arbitrator need not "add to, modify, delete, or otherwise change any provision" of the CBA to resolve the Console 9

7

Grievance. (Dkt. 27-2, at 12) (CBA Article X(2))

Moreover, the express terms of Article I demand that the dispute be resolved by applying the language of the incorporated NLRB orders to the first sentence of Article I. The dispute therefore cannot be resolved by a means that would violate Article X: it must be resolved only by interpreting and applying the language of Article I and the NLRB orders incorporated by reference.

2. The NLRB need not settle the grievance.

Magellan argues that Article I, sentence two, excludes the Console 9 Grievance from arbitration by referring questions of coverage to the NLRB. However, sentence two of Article I plainly describes that, if the express coverage terms in the first sentence come under dispute, the dispute must be resolved by applying *the language* of specified NLRB decisions. It does not refer the matter to the NLRB. The second sentence thus does not deprive the arbitrator of authority to settle such a dispute; it merely defines what language the arbitrator must apply in interpreting Article I, sentence one.

Magellan further argues that the Console 9 Grievance is a representational dispute within the exclusive jurisdiction of the NLRB and is thus not arbitrable However, "[i]f an agreement allows arbitration of contractual disputes that may affect representational issues, the concurrent jurisdiction of the NLRB will not deprive the parties of their bargain." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. Local 1369 v. Telex Computer Prods., Inc.*, 816 F.2d 519, 525 (10th Cir. 1987).

Accordingly, Magellan's arguments do not persuade the court that the arbitration provision is not susceptible to a reading that covers the Console 9 Grievance. The parties must submit the grievance to arbitration.

IT IS ACCORDINGLY ORDERED this 15th day of September, 2015, that Magellan's motion (Dkt. 28) is DENIED; Local 348's motion (Dkt. 26) is GRANTED; and Magellan is directed to submit the Console 9 Grievance to arbitration.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE